EXHIBIT A:
MARCH 13, 2019 NOTICE OF INTENT TO SUE THE CITY OF
ALEXANDRIA FOR CLEAN WATER ACT AND RESOURCE
CONSERVATION AND RECOVERY ACT VIOLATIONS AT THE
ORONOCO STREET OUTFALL SITE



**3070 M Street NW**
**Washington, DC 20007**
**202.888.2037 (main)**
keeper@prknetwork.org
www.prknetwork.org

March 13, 2019

Justin Wilson
Mayor of Alexandria
Alexandria City Hall
301 King Street
Alexandria, VA 22314

    Re:    **Notice of Intent to Sue the City of Alexandria for Clean Water Act and Resource Conservation and Recovery Act Violations at the Oronoco Street Outfall Site**

Dear Mayor Wilson**:**

    This letter constitutes a Notice of Violation and Intent to File Suit under Section 505 of the federal Clean Water Act, 33 U.S.C. § 1365, for the unlawful discharge of pollutants from a point source to waters of the United States, and under Section 7002(a)(1)(B) of the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B), for contributing to an imminent and substantial endangerment to human health and the environment.  The illegal discharges at issue, and the cause of the imminent and substantial endangerment to human health and the environment, are the City of Alexandria's ("City") continuing release of pollutants from the Oronoco Street Outfall ("Outfall") into the Potomac River ("River"), a navigable water of the United States, and resulting contamination of the River and sediments.  These pollutants include coal tar and creosote, and their chemical break-down products (collectively, "coal tar and creosote wastes").  Following 90 days from the date of this notice letter, Potomac Riverkeeper Network intends to file suit against the City as the operator and permittee for the Outfall for the ongoing discharge of coal tar and creosote wastes into the Potomac River and for contributing to the disposal of hazardous wastes that present an imminent and substantial endangerment to human health and the Potomac River ecosystem.  Potomac Riverkeeper Network will ask the Court to grant injunctive relief to halt the illegal discharge and to remedy the endangerment.

Potomac Riverkeeper Network

    Potomac Riverkeeper, Inc., d/b/a Potomac Riverkeeper Network, is a nonprofit environmental organization that protects and safeguards the ecological integrity of the Potomac River watershed, which includes the Potomac, Upper Potomac, and Shenandoah Rivers and their tributaries.  The health of the Potomac River is of critical importance to the nearly six million people who depend upon it for drinking water, as well as those who use the River and its tributaries for recreation.  Potomac Riverkeeper's work has helped communities in Virginia, Maryland, the

 Potomac Riverkeeper Network is trade name of Potomac Riverkeeper, Inc., a 501(c)3 tax-exempt nonprofit organization.
Recognized as "one of the best small nonprofits" by the Catalogue for Philanthropy
EarthShare # 87828 * CFC # 87828 

District of Columbia, Pennsylvania, and West Virginia.  Our successes range from compelling a Virginia sewage treatment plant to reduce its annual nutrient pollution by 60,000 pounds annually, to eliminating pollution from rural septic tanks to tributaries of the Potomac River.  Potomac Riverkeeper Network files this notice letter on behalf of its members who are being harmed by the discharge of pollutants described below.

Potomac Riverkeeper Network has standing to bring this action because its members depend upon the Potomac for drinking water, and regularly enjoy recreational activities including kayaking, fishing and paddling in this area of the Potomac River.[1]

The Clean Water Act

The Clean Water Act ("CWA") prohibits the discharge of pollutants from a point source to waters of the United States except in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit.[2]  The CWA defines "pollutant" to include "chemical wastes," among other things.  "Point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe … channel, tunnel, conduit" or "discrete fissure … from which pollutants are or may be discharged."[3]  The Outfall discharges pollutants directly into the Potomac River and constitutes a "pipe … channel, tunnel, conduit" or "discrete fissure … from which pollutants are or may be discharged."[4]  Additional conduits and fissures associated with the Outfall are also discharging pollutants into the Potomac River.  Thus, as described in detail below, the ongoing discharge of coal tar and creosote wastes from the Outfall, and related point sources, into the Potomac River is a discharge of pollutants under the CWA.

Under federal and Virginia law, no person, including municipalities, may discharge pollutants to waters of the United States or the waters of Virginia without a NPDES permit.[5]  Although the CWA is a federal law, each state may, upon application and approval by EPA pursuant to 42 U.S.C. § 1342(b) and 40 C.F.R. § 123.61, receive delegated authority to administer the NPDES permit program.  Virginia received approval to administer the NPDES program as the Virginia Pollution Discharge Elimination ("VPDES") program in April 1975.  EPA separately approved under the CWA, as a part of the VPDES program, the Virginia Soil and Water Conservation Board and the Department of Conservation and Recreation to administer the Municipal Separate Storm Sewer Systems ("MS4") permitting program on January 29, 2005.  This

---

[1] *See Friends of the Earth v. Laidlaw Environmental Servs.*, 528 U.S. 167, 181 (2000) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interest at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").
[2] 33 U.S.C. § 1311(a); 33 U.S.C. § 1342.
[3] 33 U.S.C. § 1362(14).
[4] *Id.*
[5] 33 U.S.C. § 1311(a); Va. Code § 62.1-44.5.

program was transferred to the State Water Control Board and the Virginia Department of Environmental Quality ("VDEQ") on July 1, 2013.

The City is currently subject to the Phase II Municipal Separate Storm Sewer System Permit VAR040057 ("MS4 Permit") as provided in 9 VAC § 25-890-40. This is a general permit that authorizes the discharge of municipal stormwater so long as the permit holder complies with all applicable regulations and permit terms. Among these permit terms is a requirement that the City prohibit non-stormwater discharges from the storm sewer system unless they are authorized by a separate, individual VPDES permit.[6] "Stormwater" is defined as "precipitation that is discharged across the land surface or through conveyances to one or more waterways and that may include stormwater runoff, snow melt runoff, and surface runoff and drainage."[7]

Resource Conservation and Recovery Act

The Resource Conservation and Recovery Act ("RCRA") regulates the storage, transportation, treatment, and disposal of solid and hazardous wastes. A "solid waste" is defined as any garbage, refuse, … and other discarded material, including solid, liquid, semisolid, or contained gaseous material from industrial, commercial, mining, and agricultural operations…."[8] Coal tar and creosote wastes are solid wastes under RCRA. The City has disposed of, and continues to dispose of, those solid wastes into the Potomac River. The continued presence of those hazardous wastes into the surface water and sediments of the Potomac River presents an imminent and substantial endangerment to health and/or the environment.

RCRA allows "any person" to file suit against any other person, defined to include "the United States and any other governmental instrumentality or agency," who was or is a "past or present generator … who has contributed or who is contributing to the … present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."[9] To file suit against a defendant whose conduct contributes to an imminent and substantial endangerment, a plaintiff does not have to demonstrate that the defendant's actions violated RCRA's regulatory programs or a RCRA-based permit.[10] Instead, one filing suit under RCRA need only show that the defendant is contributing to conditions that may present a danger to human health or the environment.[11]

Discharges of Coal Tar and Creosote Wastes from the Oronoco Street Outfall

Potomac Riverkeeper's investigation reveals that the Outfall, a point source covered by the City's MS4 Permit, has been illegally discharging coal tar and creosote wastes into the Potomac

---

[6] *Id.* § II.B.3.b.
[7] Va Code § 62.1-44.15:24.
[8] 42 U.S.C § 6903(27).
[9] 42 U.S.C. § 6972(a)(1)(B).
[10] *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 505 (4th Cir. 2015).
[11] *307 Campostella, LLC v. Mullane*, Case No. 15-cv-00224 (E.D. Va. Oct. 29, 2015).

River on a continuous basis since at least 1975. Samples taken by Potomac Riverkeeper of the pipe discharge in September 2016 and July 2017 and subsequent discussions with the City's environmental team confirm that illegal discharges persist. Coal tar is a petroleum product and a by-product of the process of using coal to produce natural gas.[12] Creosote is a distillation product of coal tar.[13] Humans can be exposed to coal tar and creosote compounds through inhaling its fumes, contact with the skin, or ingesting soil or water containing the compounds.[14] Once people are exposed to coal tar and creosote compounds, they can suffer adverse health effects, including cancer, liver and kidney damage, irritation of the respiratory tract, or damage to the skin and corneas.[15] Creosote and coal tar compounds also include a large group of chemicals called polycyclic aromatic hydrocarbons ("PAHs").[16] Several PAHs are present in the soil and groundwater upgradient of the Outfall. Many of these are classified as probable human carcinogens.[17]

Benthic and aquatic organisms can also be exposed to coal tar and creosote compounds that are in surface waters and sediments.[18] Exposure to these compounds can inhibit growth and prevent root growth in aquatic plants.[19] Invertebrates exposed to coal tar and creosote compounds can suffer from reduced shell deposition, decreased growth rates, impaired reproduction, and increased susceptibility to infectious disease.[20] Coal tar and creosote compounds in aquatic sediments can be toxic to mollusks, such as Eastern oysters and shrimp.[21] In surface water and sediments, coal tar and creosote compounds can also be acutely toxic to fish embryos by causing reduced hatching success, the development of skeletal and heart deformities and other physical abnormalities.[22] Documents prepared on behalf of the City acknowledge that PAH concentrations detected near the Outfall site are a potential danger to marine and aquatic organisms and the animals that feed on them.[23]

Records created by VDEQ, the U.S. Coast Guard, the U.S. Environmental Protection Agency, the Agency for Toxic Substances and Disease Registry, the Alexandria City Fire Department, and by or on behalf of the City explain that the City owned the former Alexandria Gas Company, a manufactured gas plant, from approximately 1851 until 1930, selling its interest

---

[12] Agency for Toxic Substances and Disease Registry, Toxicological Profile for Wood Creosote, Coal Tar Creosote, Coal Tar, Coal Tar Pitch, and Coal Tar Pitch Volatiles (Sept. 2002) ("Coal Tar Tox Profile") at 1-2.
[13] *Id.*
[14] *Id.* at 5-6.
[15] *Id.* at 7.
[16] ATSDR, Public Health Statement, Polycyclic Aromatic Hydrocarbons (August 1995) at 1.
[17] *Id.* at 4.
[18] Coal Tar Tox Profile at 4-5.
[19] World Health Organization, Concise International Chemical Assessment Document 62, Coal Tar Creosote (2004) at 82-83, *available at* http://www.who.int/ipcs/publications/cicad/en/CICAD62.pdf.
[20] *Id.* at 83.
[21] *Id.* at 83-85 (discussing study of coal tar and creosote contamination in the Elizabeth River).
[22] *Id.* at 85-87.
[23] *See, e.g.*, Marshal Miller & Associates 2013. Revised Remedial Action plan – Off Site Sediment. Prepared for the City of Alexandria. February 1, 2013.

in the site before its closure in 1946. The gas plant property, formerly located at the corner of Oronoco Street and Lee Street, generated large volumes of coal tar and creosote wastes. A 1994 Screening Site Investigation by VDEQ and a 2002 site characterization report by the City's contractor concluded that the soil and groundwater under the current Lee Street and Union Street properties are heavily contaminated with coal tar and creosote wastes.

Since at least 1975, these wastes have migrated from the Alexandria Gas Company site to the Outfall storm sewer pipe and have been discharged into the Potomac River, where they are present in the surface water and sediments. Coal tar and creosote wastes have also migrated through the soil and continue to seep up from the sediments near the Outfall. According to documents generated by, or on behalf of, the City, these discharges and seeps of coal tar and creosote wastes have resulted in an observable sheen on the water, sediment contamination, and a noticeable odor of creosote. Visual and olfactory observations show that coal tar and creosote wastes continue to be discharged from the Outfall and continue to migrate from the underlying sediments.

The City installed absorption booms near the Outfall in 1979 at the request of the U.S. Coast Guard and a floating containment boom in 2000. However, documents and visual observations demonstrate that those booms are poorly maintained and have failed to contain the contamination. Prior studies of the site confirm that coal tar and creosote wastes have been distributed into the greater Potomac River for decades by wave activity, tidal influences, propeller wash, and other activities. Documents prepared for the City acknowledge that coal tar and creosote wastes extend north and south of the outfall for distances of up to 750 feet and eastward into the river for distances of up to 175 feet.

Site investigations conducted by the City's contractors, as well as sampling by federal agencies, have shown that the following contaminants are present at concentrations above background levels in the sediments and/or surface water near the Outfall and in the broader Potomac River, beyond and downstream of the containment booms.

| Inorganic Contaminants | |
|---|---|
| Aluminum | Iron |
| Arsenic | Magnesium |
| Barium | Manganese |
| Cadmium | Mercury |
| Calcium | Nickel |
| Chromium | Potassium |
| Cobalt | Vanadium |
| Copper | Zinc |
| **Volatile Organic Compounds** | |

| Dibromochloromethane | Ethylbenzene |
|---|---|
| 1,1,2-trichloromethane | Styrene |
| Benzene | Total Xylene |
| Toluene | 1,2-dichloroethane |
| **Polycyclic Aromatic Hydrocarbons** ||
| 4-methylphenol | Chrysene |
| Naphthalene | Bis(2-ethylhexyl)phthalate |
| 2-methyl naphthalene | Anthracene |
| Acenapthylene | Fluoranthene |
| Acenaphthene | Benzo(b) fluoranthene |
| Dibenzofuran | Benzo(k) fluoranthene |
| Fluorene | Benzo(a) pyrene |
| Phenanthrene | Indeno(1,2,3-cd) pyrene |
| Fluoranthene | Dibenz(a,h) anthracene |
| Pyrene | Benzo(g,h,i) perylene |
| Benzo(a)anthracene | |

*E.g.*, Marshal Miller & Associates 2001. Preliminary Site Investigation Report, Alexandria Town Gas—Oronoco Outfall Site. Prepared for the City of Alexandria. January 25, 2001; Marshal Miller & Associates 2013. Revised Remedial Action plan – Off Site Sediment. Prepared for the City of Alexandria. February 1, 2013.

The Discharges from the Oronoco Street Outfall Violate the CWA

The ongoing discharges of coal tar and creosote constituents into the Potomac River from the Outfall are not authorized by the City's MS4 Permit and are unlawful. Among the obligations imposed on the City under the MS4 Permit is the duty to detect and eliminate "illicit discharges."[24] This requires the City to prohibit non-stormwater discharges from the storm sewer system that are not otherwise permitted by a separate, individual VPDES permit.[25] As the ongoing discharge of coal tar and creosote wastes are "illicit discharges," and not "stormwater" discharges, their continued discharge constitutes a violation of the MS4 Permit. Further, because the City does not have an individual NPDES permit that authorizes the ongoing discharge of coal tar and creosote wastes, the City is in violation of the CWA.[26]

---

[24] MS4 Permit § II.B.3.
[25] *Id.* § II.B.3.b.
[26] 42 U.S.C. § 1311(a) ("the discharge of any pollutant by any person" that is not pursuant to a NPDES permit "shall be unlawful").

<u>The Discharges from the Oronoco Street Outfall Present an Imminent and Substantial Endangerment to Human Health and the Environment Under RCRA</u>

For at least forty years, coal tar and creosote wastes have been discharging into the River via the Outfall and migrating into River sediments.  As described above, it is well known that coal tar and creosote wastes can endanger human health and the environment.  The Outfall, and the coal tar sheen at its mouth, lies adjacent to Founders Park, a recreational area used by many residents of Alexandria, including members of Potomac Riverkeeper.  Further, the River is frequently used for kayaking, paddling, and recreational fishing by the general public, including members of Potomac Riverkeeper.  Coal tar and creosote wastes break down into several constituent wastes, including PAHs, phenols, ammonia, cyanide, volatile organic compounds, and semi-volatile organic compounds.  Some of these substances volatilize into the air and are responsible for the strong creosote smell that can be observed in the areas nearby the Outfall.  Members of the public, including members of Potomac Riverkeeper, are exposed to these fumes when using Founders Park and the section of the Potomac River near the Outfall.  As described above, coal tar and creosote wastes, and their breakdown products, are linked to adverse health effects, including cancer, liver or kidney damage, and irritation of the respiratory tract.[27]  Other substances that may be related to other historic industrial sites, including metals and pesticides, have also been confirmed to discharge from the Outfall or migrate to sediments and surface waters through groundwater.  The ongoing, uncontrolled exposure of the public to coal tar and creosote fumes presents an imminent and substantial endangerment to public health.  Coal tar and creosote compounds in water and sediment also result in a number of severe adverse impacts on benthic and aquatic life, as described above, constituting an imminent and substantial endangerment to the Potomac River ecosystem.

<u>The Need for More Effective and Complete Remediation</u>

In March 2000, the City applied to have the Outfall site entered into Virginia's Voluntary Remediation Program ("VRP") to avoid a threatened enforcement action by the U.S. Environmental Protection Agency.  It was accepted into the VRP in May 2000.  A contractor retained by the City installed a floating containment boom in the immediate vicinity of the Outfall in 2000, more than 20 years after the discharges of coal tar and creosote began.  Sediment samples were collected and analyzed in late 2000 by the City's contractor to determine the lateral and vertical extent of contamination.  A site characterization report, prepared in 2002, estimated that the impact from these coal tar and creosote wastes associated with the Outfall extends approximately 750 feet along the shore of Founders Park to the south, approximately 500 feet to the north, and eastward for approximately 175 feet.  Steps were taken to address the ongoing contamination of the area including the installation of a free product recovery system in January 2004, bio-sparging wells and a permeable reactive barrier in 2013, and slip-lining portions of the Oronoco Street storm water pipe in 2009 and 2013.  Despite the work to recover free product and

---

[27] Coal Tar Tox. Profile at 7.

to slip-line the Oronoco Street storm water pipe, Potomac Riverkeeper's 2016 sampling indicated coal tar-related contaminants continued to discharge from the Outfall both within and outside of the slip-lined pipe and into the Potomac River, which Potomac Riverkeeper alerted the City to in late 2016.[28] Potomac Riverkeeper's July 2017 sampling confirmed that these illegal discharges persisted.[29]

In addition to failing to eradicate the ongoing discharge of contaminants into the River, the City had not gone far enough to fully characterize the impacted sediments. In June 2011, sediment samples were collected, tested, and compared to results from the 2000 samples. The City's contractor devised a remediation plan that included removal of sediments having total Polycyclic Aromatic Hydrocarbon (tPAH) concentrations in excess of the Probable Effect Concentration (PEC) limit of 22.8 mg/kg established by MacDonald et al. 2000 and adopted by the Wisconsin Department of Natural Resources in its sediment quality guidelines.[30] In the spring of 2016, a pre-design investigation was conducted to evaluate the sediments for visual evidence of impacts and to collect analytical data to address gaps identified within the proposed dredge and reactive cap areas.

Potomac Riverkeeper conducted sediment sampling in September and October of 2016, which included sampling of sediments both to the north and to the south of the proposed dredge area. Despite the conclusion in the 2013 RAP about the significant attenuation and degradation of contaminants in areas outside of the impacted halo, Potomac Riverkeeper's sediment analyses indicated tPAH concentrations in excess of the PEC limit to the north of the proposed dredge area.[31] As a result, Potomac Riverkeeper requested that the City conduct further sampling both to the south of the proposed dredge area and to the north of the proposed dredge area under the Robinson Terminal Pier in order to fully characterize the extent of contaminated sediments. The City conducted further sampling in the area to the south, which demonstrated tPAH concentrations in excess of the PEC limit; however, the City determined that the dangerous condition of the pier precluded the City from conducting sampling under the pier.

Ultimately, in August 2017, the City submitted to VDEQ and received approval for a revised Remedial Action Plan ("RAP") designed to remove impacted sediments from the Outfall area with a goal of eliminating visible sheen in the Outfall area in the River. To accomplish that goal, the revised RAP established (i) a dredging protocol, installation of a reactive mat around the outfall and the installation of a cap of clean sand over the dredged area;[32] (ii) environmental

---

[28] Analysis Report, Oronoco Outfall, prepared by Eurofins Lancaster Laboratories Environmental, September 14, 2016; Analysis Report, Oronoco Outfall, prepared by Eurofins Lancaster Laboratories Environmental, October 3, 2016.
[29] Analysis Report, Oronoco Outfall, prepared by Eurofins Lancaster Laboratories Environmental, July 21, 2017.
[30] Wisconsin Department of Natural Resources (2003). Consensus-Based Sediment Quality Guidelines – Recommendations for Use and Application, Interim Guidance. December 2003, WT-732-2003.
[31] Analysis Report, Oronoco Outfall, prepared by Eurofins Lancaster Laboratories Environmental, October 22, 2016.
[32] Revised Remedial Action Plan Oronoco Outfall Site, prepared by GEI Consultants, Inc., August 2017, Section 3.

monitoring requirements;[33] (iii) reporting requirements;[34] and (iv) a commitment by the City to amend the RAP to address appropriate remediation underneath the Robinson Terminal North pier, which the City would submit to VDEQ for approval within nine months of receiving a final sampling results report.[35] As of the date of this letter, the City's efforts to remediate the River and sediments near the Outfall and to prevent the recontamination of the area have not been effective.

The City commenced and completed the dredging project in February 2018 and received Remedial Completion Report from its consultant on May 3, 2018.[36] By May 9, 2018, Potomac Riverkeeper brought to the City's attention that stormwater discharges had already gouged out a significant hole in the gravel bottom at the point where the Outfall discharges into the River.[37] At that time, and for the next several months, Potomac Riverkeeper observed sheens on and in the River near the Outfall and on the River banks. By August 2018, the City acknowledged the ongoing oil sheens and the scoured area near the Outfall and undertook efforts to repair the scoured area from which a reactive mat had been dislodged. In September 2018, the City surveyed the sewer pipe leading to the Outfall to determine whether the Outfall was continuing to discharge coal tar into the River. The video survey revealed contaminants leaking into the Outfall pipe at MH-92 on the east side of the Oronoco Street and N Lee St intersection—the same manhole that houses a sump/recovery well. The City attempted to repair the leak by sealing a faulty joint with shotcrete, but the City acknowledged that they would need to develop a long-term solution. By December 2018, with oil sheens still visible in the River near the Outfall, the City conducted an inspection of the pipe and determined that coal tar product was still entering the pipe in the joint area they had attempted to repair in September. To determine the extent of coal tar product infiltrating the pipe, the City undertook a pilot test of the sump at MH-92 to assess whether the speed at which the sump fills warrants the installation of an automated system. Through the first month of testing, the sump filled every five days compared to two weeks for the other recovery wells in the area. On January 10, 2019, the City applied a polymer patch and shotcrete to the leaking areas of the pipe; however, Potomac Riverkeeper's visual inspection of the Outfall on January 24, 2019, revealed oily sheens discharging from the pipe and seeping from the bulkhead/embankment surrounding the pipe. Photographs taken on February 6, 2019, show oily sheens on top of the water both inside and outside of floating containment booms surrounding the Outfall.

In addition to the failure of the dredging project to eliminate ongoing contamination of the River and the sediments near the Outfall, the City has not proposed any long-term solutions to address the contaminated sediments under the Robinson Terminal North despite the fact that the sampling by the pier owner's consultants revealed several additional exceedances. As a result of the City's failure to address the contaminated sediments underneath and around the Robinson

---

[33] *Id*. at Section 4.
[34] *Id.* at Section 5.
[35] *Id*. at Section 1.5, pp. 7-8.
[36] Remedial Completion Report, prepared by Amec, Foster, Wheeler, May 3, 2018.
[37] Email from Nick Kuttner to William Skrabek, May 9, 2018.

Terminal North pier, as well as the City's record of poorly maintaining booms designed to contain the contamination, the Potomac Riverkeeper has repeatedly expressed concern that passive migration from areas outside of the dredged area will result in the re-contamination of clean sediments now that the dredging and capping are supposedly complete.  Even if this were not the case, the City's failure to eliminate the illegal discharges and passive migration from the waste source has already resulted in the re-contamination of clean sediments.

The City's efforts to eliminate these discharges, as required under the CWA and the RCRA, have been too slow in coming, have been too limited in scope, and have failed to ameliorate the imminent and substantial endangerment presented by the coal tar and creosote wastes.  Potomac Riverkeeper will be seeking a court order requiring the City to immediately abate the continued discharge of coal tar and creosote wastes and to characterize and remediate the full extent of the contamination it created in the Potomac River.

Federal Law Authorizes Potomac Riverkeeper to File Suit Against the City of Alexandria

Both the CWA and RCRA have "citizen suit" provisions, authorizing "any person" to file suit against any other person that either violates the CWA or causes or contributes to an imminent and substantial endangerment under RCRA.[38]  The City is a "person" within the meaning of both the CWA and RCRA.  This letter serves to comply with the CWA and RCRA notice requirements under 33 U.S.C. § 1365(b)(1)(A) and 42 U.S.C. § 6972(b)(2), and EPA's implementing regulations, respectively.

The names, addresses, and telephone numbers of each person giving notice in this letter are:

Nancy Stoner, President
Potomac Riverkeeper, Inc.
3070 M Street NW
Washington, DC 20007
(202) 888-2037

Please address all communications regarding this notice to Potomac Riverkeeper's counsel.  The names, addresses, and telephone numbers of counsel representing Potomac Riverkeeper are:

David Buente
Jamie Sadler
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8111 (Mr. Buente)

---

[38] 33 U.S.C. § 1365(a)(1); 42 U.S.C. § 6972(a)(1)(B).

(202) 736-8237 (Mr. Sadler)

We intend, following the 90-day notice period, to file a citizen suit in federal court against the defendant, City of Alexandria, under Section 505(a) of the CWA and Section 7002(a)(1)(B) of RCRA for the violations outlined above. Potomac Riverkeeper also reserves its right to assert any other applicable cause of action under state and federal laws in addition to the CWA and the RCRA.

Please do not hesitate to contact me or Potomac Riverkeeper's counsel if you wish to discuss this notice letter.

Respectfully,

*Phillip Musegaas*

Phillip Musegaas
Vice President of Programs and Litigation
(202) 888-4929
Phillip@prknetwork.org

cc:
Joanna Anderson, Deputy City Attorney, City of Alexandria
Yon Lambert, AICP, Director, Transportation & Environmental Services (T&ES)
Andrew Wheeler, Acting Administrator, US EPA
Cosmo Servidio, Region III Administrator, US EPA Region III
David K. Paylor, DEQ Director, Virginia Department of Environmental Quality