IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| POTOMAC RIVERKEEPER, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> CITY OF ALEXANDRIA, VIRGINIA, <br><br> *Defendant.* | Civil Action No. 1:22-CV-506 (CMH/WEF) |

## CONSENT DECREE

WHEREAS Plaintiff Potomac Riverkeeper, Inc. ("Potomac Riverkeeper" or "Plaintiff") is a nonprofit, membership-based environmental advocacy organization founded in 2000 to protect and restore the water quality of the Potomac River and its tributaries, which maintains a headquarters in Washington, DC;

WHEREAS, City of Alexandria ("the City" or "Defendant") is a municipality organized and existing pursuant to Title 15.2 of the Code of Virginia;

WHEREAS, on May 9, 2022, Plaintiff filed a Complaint against Defendant in the Eastern District of Virginia, Civil Case No. 1:22-CV-506 ("Complaint");

WHEREAS, Plaintiff alleges in its Complaint that stormwater discharges associated with the Outfall are subject to regulation by the Virginia Department of Environmental Quality ("VDEQ") Phase II Municipal Separate Storm Sewer System Permit VAR040057 ("MS4 Permit") as provided in 9 VAC § 25-890-40;

WHEREAS, Plaintiff's Complaint alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a), 1342; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.

§ 6972(a); and MS4 Permit related to the discharge of pollutants from the Outfall into the Potomac River and accumulation of those pollutants;

WHEREAS, Defendant denies all allegations of violations set forth in the Complaint; and

WHEREAS, Plaintiff and Defendant (collectively "Settling Parties" or "Parties," individually a "Party"), without either adjudication of Plaintiff's claims or any admission by Defendant of any alleged violation or other wrongdoing, believe it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings.

WHEREAS, the Parties certify that the representatives whose signatures appear below are duly authorized to execute this Consent Decree on behalf of their respective Parties.

CITY OF ALEXANDRIA

By: _____
Joanna Anderson
City Attorney

POTOMAC RIVERKEEPER, INC.

By: _____
Justin A. Savage
Counsel for Potomac Riverkeeper, Inc.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (CWA jurisdiction), and 42 U.S.C. § 6872(a) (RCRA jurisdiction).

2. Venue in this District is proper pursuant to 33 U.S.C. §§ 1365(c)(1), 1391, and 42 U.S.C. § 6972(a) because Defendant is located in this District and because the locations where the violations allegedly occurred are in this District.

3. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and any such action, and over Defendant, and Defendant consents to venue in this judicial district.

4. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to 33 U.S.C. §§ 1319(d) and 1365(a), 42 U.S.C. § 6972(a), and 28 U.S.C. §§ 2201 and 2202.

## II. AGENCY REVIEW OF CONSENT DECREE

5. Plaintiff submitted this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5.

6. Plaintiff notified the Court that the Federal Agencies received the Parties' Proposed Consent Decree on December 1, 2023.

7. On January 5, 2024, Plaintiff submitted to the Court a letter provided by the United States Department of Justice notifying the Court that the United States has reviewed the proposed consent decree and does not object to its entry.

## III. DEFINITIONS

8. "Affected Media" means in soil, sediment, or water, including groundwater, stormwater, or River water.

9. "CAP" means Corrective Action Plan.

10. "CIPP" means Cured-in-Place Pipe.

11. "City" means the city of Alexandria, Virginia, including its employees and others acting on its behalf.

12. "Complaint" means the complaint filed in this case by Potomac Riverkeeper, Inc. on May 9, 2022 to initiate this case.

13. "Consent Decree" means this Consent Decree.

14. "Contamination" means PAHs, semi-volatile organic compounds, and/or heavy metals associated with pollution in the Upland Area, Outfall Area, and under the Pier, including from coal tar and creosote.

15. "CWA" means the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*

16. "Day" means a calendar day unless expressly stated to be a working day. In determining any period of time under this Consent Decree, where the last day or the date specified in this Consent Decree would fall on a Saturday, Sunday, or federal, state, or City holiday, the period shall run until the close of business of the next working day.

17. "Defendant" means the City of Alexandria, Virginia, including its employees and others acting on its behalf.

18. "VDEQ" means the Virginia Department of Environmental Quality. In accordance with Virginia Code § 10.1-1232, VDEQ maintains oversight of remediation activities for portions of the Upland Area and Outfall Area that are enrolled in VDEQ's Voluntary Remediation Program as Site 00241.

19. "DOJ" means the United States Department of Justice.

20. "Effective Date" means the date the Consent Decree is entered by the Court.

21. "EPA" means the United States Environmental Protection Agency.

22. "Federal Agencies" means the United States Department of Justice and the United States Environmental Protection Agency.

23. "Force Majeure" means a Force Majeure event as defined under Section XIII (Force Majeure) of the Consent Decree.

24. "NAPL" means non-aqueous phase liquid.

25. "Outfall" means the MS04 outfall at the end of Oronoco Street in Alexandria, Virginia, that empties into the Potomac River.

26. "Outfall Area" means the tidal and submerged area around the Outfall, including areas within approximately 100 meters from the Outfall, including all soil, water, and sediment within that area.

27. "PAHs" means polycyclic aromatic hydrocarbons.

28. "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral.

29. "Parties" means the City of Alexandria, Virginia and Potomac Riverkeeper, Inc.

30. "Permit" means any permit, license, authorization, or permission granted by any local, state, or federal agency.

31. "Pier" means the pier dock of Robinson Terminal North located on North Union Street on the Potomac River in Alexandria, Virginia.

32. "Pipe" means all stormwater pipe owned by the City leading from the Upland Area and discharging through the Outfall.

33. "Pipe Program" means the Pipe Integrity and Inspection Program required under Section VII (Injunctive Relief) and Appendix B.

34. "Plaintiff" means Potomac Riverkeeper, Inc.

35. "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*

36. "Recovery Well(s)" means a physical well used to collect and recover contaminated ground water and free product, or NAPL.

37. "River" means the Potomac River.

38. "Sampling" means any collecting and testing of Affected Media to test for chemical properties.

39. "Section" means a portion of this Consent Decree identified by a roman numeral.

40. "Semi-Annual Report" means the report required under Section X of the Consent Decree.

41. "State" means the State of Virginia.

42. "Upland Area" means the non-submerged and non-tidal areas in which Alexandria Town Gas facility operated and in which Contamination from Alexandria Town Gas facility has come to be located, including the portions of areas identified under the Virginia Voluntary Remediation Program as Site 00241.

## IV.   EFFECTIVE DATE

43. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## V.   CONTINUING JURISDICTION

44.   The Court shall retain jurisdiction over this case until termination of this Consent Decree, pursuant to Section XVI (Termination), for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XIV (Dispute Resolution) and XV (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## VI.   EFFECT OF CONSENT DECREE/RESERVATION OF RIGHTS

45.   This Consent Decree resolves the civil claims of the Plaintiff for the violations alleged in the Complaint filed in this action and the 60-day notice and all other claims known and unknown associated with the Outfall and Outfall Area through the Date of Lodging of this Consent Decree. Enforcement of this Consent Decree is Plaintiff's exclusive remedy for any violation of its terms.

46.   This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such law, regulation, or permit, except as set forth herein.

47.   This Consent Decree does not limit or affect the rights of Defendant or of the Plaintiff against any third parties not a Party to this Consent Decree, nor does it limit the rights of third parties not a Party to this Consent Decree, against the Defendant, except as otherwise provided by law.

48.   This Consent Decree shall not be construed to create rights or obligations in, or grant any cause of action to, any third party not a Party to this Consent Decree.

## VII. INJUNCTIVE RELIEF

49. The remediation of the Upland Area shall be completed pursuant to the provisions of Appendix A (Upland Area Remediation Program).

50. The rehabilitation of the Pipe and the Outfall shall be completed pursuant to the provisions of Appendix B (Pipe Rehabilitation Program).

51. The Pier removal and remediation of sediment (as warranted) shall be completed pursuant to the provisions of Appendix C (Sediment Remediation Program).

## VIII. ENVIRONMENTALLY BENEFICIAL PROJECT

52. Defendant shall fund an Environmentally Beneficial Project to propagate and release mussels in the Potomac River for the improvement of water quality ("Mussels Project") in accordance with Appendix D to this Consent Decree.

53. Defendant is responsible for the satisfactory completion of this Environmentally Beneficial Project in accordance with the requirements of this Consent Decree.

54. Disputes concerning the satisfactory performance of the Environmentally Beneficial Project and/or the amount of funds expended shall be resolved under Section XIV (Dispute Resolution).

## IX. ATTORNEYS' FEES AND COSTS

55. Within 30 days of the Effective Date of this Consent Decree, Defendants shall pay to Plaintiff, through its counsel, $190,000 for reasonable past and future attorney and expert fees and expenses.

56. Defendant shall make the payment in Paragraph 55 by Electronic Funds Transfer (EFT) to the account information to be provided by Plaintiff. Defendant shall provide notice to Bob Dreher (bob@prknetwork.org), David Buente (dbuente@sidley.com), and Matthew Brewer (mbrewer@sidley.com) of completing payment on the day of submitting the EFT.

## X. REPORTING AND RECORDKEEPING

57. Defendant shall provide two Semi-Annual Reports per year, to be submitted to Plaintiff within 60 Days of the end of the second and fourth quarters of the calendar year for the duration of this Consent Decree (i.e., due February 29 or March 1 for July 1 to December 31 of the prior year, and due August 29 for January 1 to June 30 of the same year).

58. Each Semi-Annual Report shall include the following contents as relevant to the reporting period:

    a. Upland Area Remediation: A narrative update on the progress concerning remediation of the Upland Area pursuant to the provisions in Appendix A, including the progress accomplished by the Recovery Wells; quantitative thickness and volume data of NAPL recovered from each Recovery Well installed; results of any trials conducted during the reporting period; and Annual Assessment and Action Plans (addressed in the Semi-Annual Report). The thickness and volume data of NAPL recovered shall be reported for each biweekly period.

    b. Pipe and Outfall Remediation: A narrative update on the progress of the Pipe Rehabilitation Program pursuant to the provisions in Appendix B, photographs from visual inspections of the Outfall area and contaminant boom maintenance; results from water sampling conducted at the Outfall, as detailed in Appendix B; results of any inspections conducted during the reporting period; any plans or design documentation prepared related to the pipe created during the reporting period; and any post-installation or post-construction documentation from the reporting period.

    c. Pier Removal and Sediment Remediation: A narrative update on the progress, pursuant to Appendix C, made concerning the Pier removal, if relevant for the

reporting period; and a narrative update on the progress made with Sediment remediation, if relevant for the reporting period.

59. This Consent Decree and all Semi-Annual Reports (including attachments) produced under the terms of this Consent Decree shall be posted promptly and publicly on a dedicated webpage maintained by Defendant.

60. Plans, reports, and other documentation due to Plaintiff under this Consent Decree and its appendices, including where indicated to be provided with the next Semi-Annual Report, are generally subject to the following comment-and-response procedures, unless otherwise indicated: Plaintiff will provide any comments to the City within 30 days of receipt of the required plan, report, or other documentation. Within 30 days of receipt of Plaintiff's comments, the City shall respond in writing to the comments, including identifying any required corrective actions and estimated timeline for completed any corrective actions. To the extent that corrective actions by the City extend past the comment-and-response period, the City will provide monthly updates to Plaintiff on the first of the month on progress for any corrective action.

## XI. NOTICES

61. Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Decree, they shall be made in writing and submitted via email and, upon request, by one of the following methods: (a) hand delivery; (b) first class mail; or (c) overnight mail by private courier. In the event of a change to any of the contacts listed below, the party making the change shall notify the other contacts below. Notice shall be sent to the following:

<u>Plaintiff</u>

Bob Dreher, Potomac Riverkeeper, Inc.

Dean Naujoks, Potomac Riverkeeper, Inc.

David Buente, Sidley Austin LLP

Justin Savage, Sidley Austin LLP

<u>Defendant</u>

Joanna Anderson, City of Alexandria

Paul Calamita, AquaLaw PLC

Justin Curtis, AquaLaw PLC

## XII. SUPPLEMENTAL PAYMENTS

62. Beginning on the Effective Date of this Consent Decree and continuing until the Court's approval of a joint stipulation of terminating this Consent Decree filed pursuant to Section XVI (Termination), upon 30 Days of written demand by Plaintiff, Defendant shall make supplemental payments in accordance with the following criteria: if Defendant fails to meet any deadline or schedule under this Consent Decree, including those set forth in plans incorporated herein, Defendant shall pay $500 if the action is completed one to 10 days past the compliance date, $1,000 if the action is completed 10 to 30 days past the compliance date, or $3,000 if the action is completed 31 days or more past the compliance date.

63. Defendant shall also make supplemental payments in accordance with the following criteria: $500 per sampling event for an exceedance of limits in outfall water sampling, including (1) 8.9 ug/l Naphthalene; (2) 5.8 ug/l Benzene; and (3) 15 mg/l Total Petroleum Hydrocarbons.

64. If grounds for supplemental payments arise during the first or second quarters of a calendar year, Plaintiff may issue a written supplemental payment demand no later than 60 days after receiving the Semi-Annual Report for those quarters. If grounds for supplemental payments arise during the third or fourth quarters of a calendar year, Plaintiff may issue a written

supplemental payment demand no later than 60 days after receiving the Semi-Annual Report for those quarters.

65. Defendant shall make the payment in Paragraphs 62 and 63 for any undisputed demands within 30 days after receipt of a demand for such payment by Plaintiff. Until termination of the Environmentally Beneficial Project specified in Section VIII of this Consent Decree, supplemental payments shall be made to the Virginia Department of Wildlife Resources ("VDWR") to be used to fund the release of additional mussels into the Potomac River in accordance with the Mussels Project set forth in Appendix D to this Consent Decree. Such supplemental payments shall be made by Electronic Funds Transfer ("EFT") to the account specified by VDWR. Defendant shall provide notice to Bob Dreher (bob@prknetwork.org), David Buente (dbuente@sidley.com), and Matthew Brewer (mbrewer@sidley.com) of completing payment on the day of submitting the EFT. Supplemental payments after termination of the Environmentally Beneficial Project specified in Section VIII of this Consent Decree, or after VDWR notifies Defendant that it cannot use funds from the supplemental payments for the purpose stated in this paragraph, shall be made to Plaintiff and dedicated to its "50 Million Mussel Project" to support mussel restoration projects in the Potomac River and its tributaries. Such payments shall be made by EFT to the account specified by Plaintiff.

66. All supplemental payments begin to accrue on the date that complete performance is due, or a violation occurs and shall continue to accrue through the final day of noncompliance. Nothing herein shall prevent the simultaneous accrual of separate supplemental payments for separate violations of this Consent Decree.

67. Supplemental payments shall continue to accrue as provided in this Section during Dispute Resolution pursuant to Section XIV (Dispute Resolution), but any disputed supplemental

payments not withdrawn or dismissed through the Dispute Resolution process need not be paid until 30 days after the final resolution of the dispute, including resolution of any judicial appeal.

68. Plaintiff's failure to demand any supplemental payment under this Consent Decree does not constitute a waiver of the Plaintiff's right to make such a demand for future supplemental payments.

69. Except as otherwise expressly set forth in this Consent Decree, payment of any supplemental payment shall not relieve Defendant from the obligations imposed by this Consent Decree, or any permit that may be issued or any other statute or regulation.

## XIII. FORCE MAJEURE

70. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, including but not limited to Acts of God, weather events, strikes, unavailability of necessary materials or specialized contractors, requirements lawfully imposed by a regulatory or permitting authority, seasonal restrictions on regulated activities, or delays caused by the action or inaction a third party, provided the City exercises reasonable diligence to avoid or minimize the delay.

71. The requirement that Defendant exercises "reasonable diligence" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring, and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.

72. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

73. An "action or inaction by a third party" shall include, without limitation, the grant of any permit or approval by a federal or State agency; environmental projects by Alexandria

Renew Enterprises that may prevent or delay access to the Pier; and measures by the owner of the Pier to make the area on, around, and under the Pier safe and accessible.

74. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide written notice electronically to Plaintiff within 10 days of (a) the occurrence of that event, or (b) the date Defendant became aware of the grounds for asserting Force Majeure, whichever is later ("Force Majeure Notice"). As part of that transmission, Defendant shall provide in writing to Plaintiff an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a specific list of Consent Decree requirements, by paragraph, that may be affected; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure event.

75. Following initial notice of the occurrence of a Force Majeure event, Defendant will provide monthly notice to Plaintiff, on the first day of each month, until the Force Majeure event is resolved.

76. Disputes as to the validity or scope of a Force Majeure event shall be resolved by the dispute resolution procedures set forth in Section XIV (Dispute Resolution). In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the

duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of this Section XIII. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to Plaintiff and the Court.

## XIV. DISPUTE RESOLUTION

77. The dispute resolution procedures of this Section shall be the exclusive mechanism for the Parties to raise and resolve disputes arising under or with respect to this Consent Decree, including its appendices.

78. Any dispute that arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties in an attempt to resolve the dispute in a good faith and expeditious manner. A dispute shall be considered to have arisen when one party sends another party a written Notice of Dispute. Electronic mail is the preferred delivery method for a Notice of Dispute to the Parties.

79. The Parties shall meet and confer within 14 days of receipt of the Notice of Dispute.

80. If the dispute is not resolved within 45 days of the Notice of Dispute, the disputing party may invoke formal dispute resolution by submitting a written Statement of Position to the other Party. If the receiving Party disagrees, it shall submit its own Statement of Position to the other Party within 30 days of receipt of the other Party's Statement of Position. Either Party may then refer the dispute for judicial resolution within 30 days of receipt of the second Statement of Position.

81. The Parties may extend or modify the time periods applicable to a particular Notice of Dispute by mutual agreement.

82. The Court shall have exclusive and continuing jurisdiction to resolve any dispute arising between or among the Parties with respect to matters within the scope of this Consent Decree. With respect to the resolution of any dispute pursuant to a petition to the Court, the Court shall resolve the dispute in accordance with applicable law, but in no event shall the Court be precluded from holding evidentiary hearings, considering testimony, or otherwise making determinations of fact if it deems such to be appropriate.

## XV. MODIFICATION

83. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties, unless the Court approves the modification pursuant to paragraph 84. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Non-material changes to the Decree shall include, but are not limited to, schedule changes of six months or less or modifications resulting from a Force Majeure event.

84. Any disputes concerning modification of this Decree shall be resolved pursuant to Section XIV of this Decree (Dispute Resolution), provided, however, that the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVI. TERMINATION

85. This Consent Decree may be partially terminated as to Appendices A through C once the respective requirements below are met.

86. The requirements of Appendix A will continue until the termination of Appendix B.

87. The requirements of Appendix B may be terminated following completed installation of the CIPP liner and upon two subsequent consecutive years of inspections of the Pipe without identification of any defects that require corrective action. The termination will be

effective 30 days after the City provides Plaintiff written notice that the termination conditions have been met, provided Plaintiff concurs that the conditions have been met. If Plaintiff concurs, the Parties will file a joint notice of the partial termination with the Court. The City may invoke Dispute Resolution if Plaintiff does not concur or fails to respond within 30 days.

88. The requirements of Appendix C may be terminated upon finalization of the Remediation Completion Report. The termination will be effective 30 days after the City provides the final Remediation Completion Report and written notice of termination to Plaintiff, provided Plaintiff concurs that the conditions have been met. If Plaintiff concurs, the Parties will file a joint notice of the partial termination with the Court. The City may invoke dispute resolution if Plaintiff does not concur or fails to respond within 30 days.

89. After Defendant has completed the requirements of Sections VII (Injunctive Relief) and VIII (Environmentally Beneficial Project) and has complied with all requirements of this Consent Decree, then Defendant may serve upon Plaintiff a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

90. Following receipt of Defendant's Request for Termination, the Parties shall confer informally concerning the Request. If Plaintiff concurs that Defendant has satisfactorily complied with the requirements for termination of this Consent Decree, the Parties shall jointly move the Court to terminate the Consent Decree. If Plaintiff does not agree that termination is appropriate, Defendant may invoke Dispute Resolution.

Dated and entered this 9th day of Jan, 2024.

*Claude M. Hilton*
UNITED STATES DISTRICT JUDGE